ESTATE OF WILTON J. LAMBERT, DECEASED, BY ELIZABETH G. LAMBERT, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92119.  Promulgated October 24, 1939.

*George B. Fraser, Esq.*, for the petitioner.
*William A. Schmitt, Esq.*, for the respondent.

OPINION.

Leech: To recapitulate, petitioner contends that legal fees owing to decedent, accrued at the time of his death, in the amount of $56,-873.88, are not includable in gross income of decedent for the period in 1935 ending in his death, under the Revenue Act of 1934, section 42, the pertinent part of which is quoted in the margin.[1] In the alternative, she seeks the deduction of expenses in the amount of $4,213.05, incurred in connection with the collection of those accrued fees. In addition, petitioner claims the right to deduct the sum of $1,690.13, i. e., the stock assessment of $1,717.87, paid in 1936, less interest of $27.74, accruing after decedent's death, an alleged loss of $9,166.30, on decedent's annuity contract, which is the difference between the adjusted cost of the contract on the date of his death, and its dis-

---

[1] SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.
  * * * In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period.

counted value on that date; an alleged loss of $2,345.85 in the Utermehle case, resulting from the overpayment in that controversy, plus expenses of $3,500, incurred in defending that suit; the sum of $200, paid in settlement of the Oliver claim, plus expenses of $300 incurred in defending it; and the sum of $25,000, paid in settlement of the Allen claim, plus expenses of $9,225.86 incurred in defending it. These contentions present the five issues which are discussed in the order stated.

### First Issue.

Petitioner does not contest the action of respondent in taxing the accrued fees of decedent, on the ground that any of the items included therein were uncollectible, nor does any evidence denying the collectibility appear in the record. See *American Cigar Co.*, 21 B. T. A. 464; affd., 66 Fed. (2d) 425; certiorari denied, 290 U. S. 699; *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34. She attacks that action for the reason, alleged in the petition, that the sums aggregating the disputed fees were earned and owing to decedent long before 1935 and, in addition, argues that section 42 of the Revenue Act of 1934, upon which respondent supports his action, is unconstitutional.

Respondent asks us to find that these fees were earned and owing to decedent and were thus accrued to him during the period, in 1935, preceding decedent's death. Petitioner opposes this finding. The petition alleges and the answer denies that the fees were earned and owing to decedent before 1935. No evidence was offered on that point. So, we have made no finding.

However, we think the fact as to when these accounts receivable were earned and accrued, is immaterial. It was stipulated, and has been found as a fact, that the entire amount in dispute was accrued at the date of decedent's death. The controlling statutory provision reads: " * * * amounts accrued up to the date of his death." Petitioner's decedent was on the cash basis. None of these fees had been included in income before the taxable year. This is exactly the situation to which Congress intended the pertinent provision of section 42, *supra*, to apply. *Lillian O. Fehrman, Executrix*, 38 B. T. A. 37. The effect of that provision, together with its complement in section 43, *infra*, was merely to place decedent on the accrual basis of accounting for the period of the year, 1935, in which he died.

Thus, the total gross income for the part of the year which ended by his death is income actually received plus income accruable, and his total deductions are those to which a taxpayer on the cash basis is entitled, plus those to which a taxpayer on the accrual basis is

entitled. *Herder* v. *Helvering*, 106 Fed. (2d) 153.[2] Receivables properly "* * * accrued up to the date of his [decedent's] death," regardless of when they first became accruable, and which have not yet been reflected in income of a prior period because of his use of the cash system of accounting, are to be included in his gross income for the part of the year preceding death. On the other hand, under the last sentence of section 43, *infra*, all obligations of decedent properly "* * * accrued up to the date of his [decedent's] death," irrespective of when they acquired that status, are deductible. This is subject to the provision "if not otherwise properly includible [allowable] in respect of such period or a prior period," which means, of course, only, that there may not be duplication of income or deductions.

Section 42 of the Revenue Act of 1934, *supra*, therefore, clearly supports the disputed action of respondent. *Herder* v. *Helvering*, *supra; Lillian O. Fehrman, Executrix*, *supra*.

However, petitioner urges that this section is unconstitutional when tested by the Fifth Amendment, and that its application would deprive decedent's estate of property without due process of law. The reasoning advanced is not wholly clear but seems to be, in substance, that the section (1) constitutes double taxation, and (2) is arbitrary and capricious in that it unreasonably discriminates against taxpayers who die. The constitutional challenge of section 42, *supra*, does not seem to us considered or answered in the reported cases.

Double taxation is not, *per se*, violative of the Fifth Amendment. *Hellmich* v. *Hellman*, 276 U. S. 233; *Fort Smith Lumber Co.* v. *Arkansas*, 251 U. S. 532; *Packard Motor Car Co.* v. *United States*, 69 Ct. Cls. 570. But here there is no double taxation in any legal sense. Cf. *Bull* v. *United States*, 295 U. S. 247. The only tax imposed directly on the disputed accrued fees is the income tax authorized by section 42, *supra*. See *Eisner* v. *Macomber*, 252 U. S. 189; *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179. The estate tax, to which these accruals may be subject under section 302 of the Revenue Act of 1926, as amended, is not a tax on such accruals, but is an excise tax imposed upon their transfer, which is only measured by the value of the property so transferred at decedent's death. *Knowlton* v. *Moore*, 178 U. S. 41. That is not constitutionally objectionable. As the Supreme Court said in the *Bull* case, *supra:* "The same sum of money in different aspects may be the basis of both forms of tax."

---

[2] It should be noted, however, that this is the result, always, for the first period of accounting upon a change of basis from the cash to the accrual system. *William Hardy, Inc.* v. *Commissioner*, 82 Fed. (2d) 249, and *Barbas* v. *Woodworth* (Dist. Ct., Mich., Jan. 31, 1939).

That the section under attack is arbitrary and capricious because it unreasonably discriminates against taxpayers on the cash basis who die, is likewise without merit, particularly in view of its complement, section 43.[3] The cash system of accounting is one that has a proper use only where there is a future period for taxing income received subsequently to the period in which the right to receive accrues. It is only because of the existence of such future period that the taxing of the property represented by the accrual is postponed until the actual period of collection. Thus, where a taxpayer, reporting on a cash basis and deferring the inclusion of receivables acquired in one year until the future period of their collection, dies, the possibility of the existence of such future period ceases. One of the conditions supporting the use of the cash system is, therefore, then eliminated and such system becomes no longer applicable to correctly reflect income. Section 42, *supra*, merely makes reasonable provision for this condition. See *Lillian O. Fehrman, Executrix, supra.*

Taxing persons who die, in this particular way, is not an unreasonable discrimination. The application of this provision is certain to all such taxpayers. In the Social Security Act, Title IX, Congress singled out for tax purposes the employers of eight or more persons, and in the same act (Title VIII), exempted from such tax agricultural labor, domestic service, and civil service. By section 233 of the Revenue Act of 1921, foreign corporations were exempted from tax on the income received on the sale abroad of goods bought in this country. The Act of Congress of August 2, 1886, as amended by section 3 of the Act of Congress of May 9, 1902, imposed an excise on artificially colored oleomargarine, to the exclusion of artificially colored butter. The Supreme Court held all these discriminations reasonable and not arbitrary or capricious. *Steward Machine Co.* v. *Davis*, 301 U. S. 548; *Helvering* v. *Davis*, 301 U. S. 619; *Barclay & Co.* v. *Edwards*, 267 U. S. 442; *McCray* v. *United States*, 195 U. S. 27.

### Second Issue.

Since we have affirmed respondent in the first issue, the contention of the petitioner that the expenses incurred by her in ascertaining and collecting the accrued fees, thus taxed, are deductible, under section 43 of the Revenue Act of 1934, must be answered. It is argued that these fees are one of the costs of producing this income,

---

[3] SEC. 43. PERIOD FOR WHICH DEDUCTIONS AND CREDITS TAKEN.

* * * In the case of the death of a taxpayer there shall be allowed as deductions and credits for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly allowable in respect of such period or a prior period.

composed of the accrued fees, and that, if these fees are to be taxed under section 42, *supra*, the deduction of the necessary expenses of the estate in reducing these fees to possession, must be allowed.

This contention overlooks the fact that we are not concerned here with administrative expenses of the estate. Our consideration is limited to income, on the one hand, and deductions on the other, which had already accrued to decedent at his death.

Deductions are a matter of legislative grace, and the conditions prescribed by Congress as prerequisites to their allowance must be strictly observed. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. The petitioner may well be entitled to the disputed deductions in computing the net estate of decedent subject to estate tax. But none of them constitute obligations owed or accrued by decedent at his death, and, consequently, are not deductible under section 43, *supra*.

### Third Issue.

The assessment on decedent's 80 shares of stock in the Federal-American National Bank & Trust Co. was made July 5, 1934, during decedent's lifetime, and was paid February 5, 1936, after his death. No deduction could have been taken in decedent's 1934 return, because he was then on the cash basis. Section 43 of the 1934 Act, *supra*, expressly removes this disability for the final taxable period of decedent's life, because the assessment was not properly includable in any prior period.

We, therefore, hold that this deduction is allowable. *Jamieson Associates, Inc.*, 37 B. T. A. 92; *Central National Bank of Cleveland, Administrator*, 35 B. T. A. 489.

### Fourth Issue.

Decedent paid $46,067.40 for his annuity contract, on December 27, 1934. During his life he received $1,800 on this contract, in accordance with its terms, leaving an unrecovered cost at the date of his death amounting to $44,267.40. On August 6, 1935, the discounted value of the annuity was $35,101.10. Petitioner claims that the difference between the unrecovered cost and the discounted value, or $9,166.30, is a deductible loss to decedent because (1) he entered into this transaction for profit and (2) the respondent has ruled that petitioner, who as an individual is the beneficiary under the contract from and after decedent's death, must report this identical sum as income, which, she says, will be unjust if a corresponding deduction is not allowed decedent. The respondent's ruling in this connection is neither cited nor set out in full, no allegation thereof is made in the petition, and it has not been put in evidence. In any event, since petitioner in her present representative capacity and as

an individual, is two separate taxable entities, we do not deem any such ruling material.

Assuming that the annuity contract was purchased for profit (see *Helvering* v. *Louis*, 77 Fed. (2d) 386), the position of petitioner is unsound. As originally issued, it provided that the Mutual Life Insurance Co. would pay decedent $900 every three months during his life; if he should die before the sum of the payments equaled the premium, then the company would continue the payments to petitioner, as his widow, until the sum of them, plus a smaller final payment, equaled the premium. The result to decedent of the interruption of payments to him, caused by his death, was that the interest or profit on the original investment, which otherwise would have been received by decedent, was not realized because the contract bound the company to repay to decedent's widow only the principal amount of the premium. The propriety of the deduction of this interrupted interest or profit as a loss to decedent is the issue here.

The answer is apparent on the statement of the question. Failure to receive expected profits does not support a deduction. *Warren Service Corporation*, 39 B. T. A. 856; *Henry C. Taylor*, 34 B. T. A. 241; *John F. Blanchard*, 17 B. T. A. 1271; *Frank F. Nicola*, 1 B. T. A. 487.

Moreover, since the annuity was not payable to decedent over a fixed period (see *George M. Cohan*, 11 B. T. A. 743), but was payable throughout his life, there is no basis, established here, for a deduction. *Helvering* v. *Louis, supra*. Decision on this issue will be for respondent.

### Fifth Issue.

Petitioner claims the right to deduct expenses incurred in paying and settling litigated claims against the decedent, under section 43 of the Revenue Act of 1934, *supra*. Each one of the suits in question was commenced in 1936, almost a year after decedent's death. Liability was denied in each case. It is true that these causes of action were founded on occurrences in decedent's lifetime, but there were no liquidations of the amounts due the claimants until two years after his death. In no case was the decedent's liability fixed and determined at his death. At that time there was no basis existing for an accrual of any part of any of the items involved. *United States* v. *Anderson*, 269 U. S. 422; *Lucas* v. *American Code Co.*, 280 U. S. 445; *Crown Cork & Seal Co.* v. *United States*, 4 Fed. Supp. 525. Thus, these contested payments were not "accrued up to the date of his death." It follows that petitioner may not deduct the payments and expenses in connection with these claims against decedent's estate.

In one of the actions against decedent, the Utermehle case, an investigation showed that the decedent had overpaid the claimant instead of being indebted to her. It is noted this overpayment could not be recovered because the claimant was judgment-proof. There is no evidence that this debt was ascertained to have become worthless prior to the date of the death of the decedent. In fact, the proof is to the contrary, for the overpayment was not discovered until after the suit had been filed against decedent's estate in 1936. *Herder* v. *Helvering, supra.* But a debt which is not ascertained to have become worthless by a decedent until the time of his death or afterwards, may not be deducted upon his final return under section 43. *Herder* v. *Helvering, supra.* On that point, this case is controlling here. The deduction of any amount due decedent's estate by reason of such overpayment is therefore denied.

*Decision will be entered under Rule 50.*