ESTATE OF GEORGE W. WICKERSHAM, CORNELIUS W. WICKERSHAM, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100630. Promulgated May 29, 1941.

*G. Forrest Butterworth, Jr., Esq.,* and *Clarence Castimore, Esq.,* for the petitioner.

*J. R. Johnston, Esq.,* for the respondent.

#### OPINION.

LEECH: Respondent has determined a deficiency of $63,820.90 in income tax of the decedent, George W. Wickersham, for the period January 1, 1936, to the date of his death on January 25, 1936. This deficiency arises through the action of respondent in including in taxable income of the decedent, as accruable under section 42 of the Reveune Act of

1936,[1] an amount as constituting decedent's portion of the uncollected partnership profits of the law firm of which he was a member, as earned to the date of his death and distributable to his estate under the terms of the partnership agreement, and an amount as commissions earned to date of decedent's death for services by him individually as guardian and trustee. The amount included in each instance was the value at which these two items had been returned for estate tax purposes.

Certain of the facts involved are formally stipulated and this stipulation we include by reference. Briefly, the stipulated facts are summarized as follows.

George W. Wickersham died a resident of the County and State of New York on January 25, 1936. At all times material here he had kept his accounts and made his returns on a cash receipts and disbursements basis. The accounts of the petitioner herein and its returns have also been kept and made on such basis.

On or about May 15, 1937, the petitioner filed in the office of the collector of internal revenue for the second district of New York the income tax return for the decedent for the year 1936, in which was reported a tax liability of $6,490.91, which amount was paid, together with interest thereon of $16.23. On November 8, 1940, petitioner, under protest, paid on account of the deficiency here in question the sum of $41,022.84, together with interest thereon of $8,977.16.

At the time of his death, George W. Wickersham was the duly qualified and acting guardian of the property of Gloria Laura Morgan Vanderbilt, an infant. Subsequent to his death, and on or about May 15, 1936, his executor, together with the other guardian of the property of the infant, petitioned the Surrogate's Court of New York County for judicial settlement of the accounts and for allowance of the commissions due the decedent for services rendered up to the date of his death. No request had been made theretofore for any allowance for such services and the amount of the commissions requested for allowance in the sum of $34,668.81 was allowed by the surrogate and paid to petitioner on August 6, 1936. Of this sum, $34,121.80 was commissions on principal and $547.01 was commissions on income. The commissions allowed on income were included as accrued at the time of death in the original return filed for the decedent and petitioner concedes that they are taxable here. The amount of the commissions on principal was disclosed in a rider attached to that return but the sum was not included as income accrued prior to death. However, the right or claim to the commissions, both on principal and income, was re-

---

[1] SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

\* \* \* In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period.

ported as an asset of the estate of the decedent in the estate tax return filed at a value of $34,668.81. This value was accepted by respondent upon audit of that return.

The decedent at the time of his death was a partner in the law firm of Cadwalader, Wickersham & Taft, 14 Wall Street, New York City, under articles of copartnership effective for two years from January 1, 1936. For a number of years prior to the formation of the particular firm existing on January 25, 1936, decedent had been a member of several similar preceding organizations of the same name but which from time to time had been affected by death or retirement of members. These several organizations thus affected were designated by numbers on the books of account of the firm, these being numbers 4 to 12, inclusive. The organization in effect at the time of decedent's death was designated as number 13.

The books of account of partnership number 13 and those of all the predecessor partnerships were at all times kept on the cash receipts and disbursements basis of accounting. The income of the partnership of which decedent was a member at the time of his death, computed on a cash basis, was made up principally of fees and commissions paid by clients of various kinds for legal services. Some of these fees consisted of periodic retainers and there were others in specific matters for which an agreement as to the amount to be paid for such services existed at or before the date of decedent's death.

In the income tax return filed for the decedent for the year 1936 the sum of $47,120.53 was included in item 7 as income from the copartnership. This was explained in a rider attached to such return as decedent's share of fees and disbursements where the amounts were fixed and determined prior to his death, estimated to be in that amount. Of this amount petitioner now concedes that the sum of $12,307.68, only, which had been collected and which petitioner concedes was distributable, is taxable here.

Upon the death of the decedent the surviving partners continued to operate under the partnership agreement, which provides for such a contingency, and distributions were made to petitioner as collection of fees were effected. These distributions were in the amount determined by the surviving partners as the proportion of such fees due the decedent for services rendered by him up to the date of his death. The amounts so paid were as follows:

| | |
|---|---|
| Jan. 26 to Dec. 31, 1936 | $75,321.73 |
| 1937 | 40,823.70 |
| 1938 | 5,530.73 |
| 1939 | 7,528.65 |
| Total | 129,204.81 |

In addition to the payments made as aforesaid to petitioner, there is a probability of further collections in which the proportion due the decedent's estate will not exceed $1,000.

The interest of decedent in the profits of the copartnership of Cadwalader, Wickersham & Taft under the articles of partnership was reported as an asset of the estate upon its Federal estate tax return filed on or about April 22, 1937, at an estimated value of $132,000. Upon audit of the return respondent accepted this value.

On or about June 28, 1938, the New York State Tax Commission assessed an additional state income tax of $9,554.98 on account of accrued income of the decedent as determined by that commission for the period January 1 through January 25, 1936, as follows:

| | |
|---|---:|
| Commissions on principal as general guardian | $34, 121. 80 |
| Commissions as trustee | 436. 04 |
| Additional partnership income | 84, 879. 47 |
| Total | 119, 437. 31 |

The "additional partnership income" was in addition to $47,120.53 originally returned as estimated accrued income to date of decedent's death.

The additional state income tax was paid by the petitioner to the New York State Tax Commission about July 1, 1938. Application for revision and claim for refund have been filed in accordance with the statutes of the State of New York. The application and claim for refund had not been finally acted upon, but it is mutually agreed that this item may be considered upon Rule 50 settlement in accordance with its status at that time to be determined by agreement of counsel.

In the partnership return of Cadwalader, Wickersham & Taft for the calendar year 1936, the year of decedent's death, decedent's distributable portion of the total partnership income collected for that calendar year and representing compensation for services by him to the date of his death on January 25, 1936, less expenses allocable thereto to that date, was stated as $75,321.73. No separate partnership return was made for the period January 1 to January 25, 1936, inclusive, or for the period January 26 to December 31, 1936, inclusive.

In addition to the stipulated facts summarized above we find, upon the basis of evidence submitted at the hearing, the following facts.

Although the law of New York State does not specifically provide for the determination of the amount of compensation allowable to the estate of a deceased fiduciary for services performed up to the date of his death when that event occurs prior to his distribution of the trust estate, the uniform practice for many years has been, in cases where the services were well and truly performed, to allow such estate the same commissions as would have been allowable to the decedent under the law had he lived. Under these conditions it was possible to deter-

mine with accuracy the amount which would be allowed by the surrogate to petitioner upon his application for an accounting of commissions due his decedent up to the time of his death as guardian of the estate of Gloria Laura Morgan Vanderbilt.

Of the total amount received by petitioner from the firm of Cadwalader, Wickersham & Taft out of collections from January 26 through December 31, 1936, made by the successor firms, the sum of $30,811.35 constituted the decedent's share as estimated in matters in connection with which no agreement with the client as to the amount of compensation existed at the time of decedent's death, and no other facts existed at that time from which it was possible to ascertain definitely the amount of the fee which would be charged or collected. Of the amounts received by petitioner in 1937, 1938, and 1939, from the firm, $47,923.31 was decedent's share in matters where the conditions were similar and the amount ultimately to be realized impossible of accurate determination at the time of decedent's death. These payments constituted decedent's portion of fees not yet due the partnership on the date of decedent's death for the reason that they were to be paid in connection with legal matters which were in various stages of completion on that date and were completed by the successor firms. They were not billed until after the date of decedent's death. In some cases the amounts of the fee was fixed only after consultation with the client. Some were court allowances, some depended upon the outcome of the matter involved, and some were heavy cases where bills rendered were later reduced and a lesser amount accepted in settlement. Some items were for services extending over a long period of time. No agreements existed with clients as to the fee in any of these matters and there were no amounts on the books of account of the firm at the date of decedent's death from which allocations of any definite amount as representing the proportionate share which it would ultimately receive could be made to the estate of decedent.

At the time this proceeding was heard and when briefed by counsel, the correct answers to the questions presented upon the above facts were in considerable doubt, since there was conflict in the decisions of the courts upon cases arising under section 42, *supra*. However, that doubt has been resolved by the recent decision of the Supreme Court in *Helvering* v. *Enright*, 312 U. S. 636, which we think concludes petitioner upon the issues here raised.

In the *Enright* case, as here, the decedent was a member of a New York law partnership and under a substantially similar partnership agreement in that case, as here, the Commissioner had included in taxable income the decedent's interest in the partnership accounts at the same value at which that interest had been returned for estate tax.

In sustaining that action the Court clearly laid down the rule that the accrual of income required by section 42, *supra*, is not a system of

accrual which might be applicable in other situations under accepted accounting practices, but requires the accrual of the value of decedent's interest in unfinished business of the firm approximated at date of death and representing compensation for the services rendered by him even though the compensation to be received ultimately in individual matters is not then determinable because dependent upon the final outcome of matters still in progress. The Court stated the rule thus:

* * * Accrued income under § 42 for uncompleted operations includes the value of the services rendered by the decedent, capable of approximate valuation whether based on the agreed compensation or on quantum meruit. The requirement of valuation comprehends the elements of collectibility. * * *

This rule is controlling not only as to the amount included by respondent as representing decedent's interest in the firm accounts but also the item representing commissions for services rendered by him, individually, as guardian and trustee. As to the latter item, see also *Helvering* v. *McGlue*, 119 Fed. (2d) 167. Respondent's action is accordingly sustained, but, in view of the stipulation of counsel for adjustment of the deficiency by reason of additional state taxes paid,

*Decision will be entered under Rule 50.*