W. J. SANDBERG COMPANY, Appellant, v. IOWA STATE BOARD OF ASSESSMENT & REVIEW, Appellee.

No. 44229.

104

April 5, 1938.

Supplemental Opinion on Petition for Rehearing and Rehearing Denied August 5, 1938.

Otto L. Schluter, for appellant.

John H. Mitchell, Attorney General, and Clair E. Hamilton, for appellee.

Hamilton, J.—Plaintiff is an Iowa corporation located in Des Moines engaged in the business of selling leather and shoe findings to shoe repairmen in Iowa. There are about 5,000 shoe repairmen in this state. Plaintiff purchases the leather from the tannery in the forms of bends, strips, or taps; a bend is half of the hide of the animal with the head, belly, and shoulders cut off and is usually 52 inches long and 20 inches wide, a strip is

cut out of a bend and is usually 6½, 8½, 11, and 13 inches wide, and taps or half soles are cut out of a bend or strip in width and length to fit the various sizes of men's and women's shoes. Other shoe findings consist, mainly, of cement, glue, wax, thread, nails, polish, plates, rubber and leather heels. These materials are purchased of the plaintiff by the various shoe repairmen in quantities, large or small, according to their needs. From these materials the shoe repairmen select and use whatever is necessary to make the repairs and the customer is charged a lump sum for the repair job on his shoes. The amount of material used in making the repairs averages about 30 per cent of the total charge.

By the sales tax law there is imposed a flat tax of 2 per cent on gross receipts from all sales of tangible personal property sold at retail in the state to "consumers or users". Code, section 6943-f39. Section 6943-f38 of the Code contains statutory definition of terms and phrases made use of in the Retail Sales Tax Law, pertinent provisions of which are:

" * * * b. 'Sale' means any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration.

"c. 'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, other than for processing or for resale, * * *."

The State Board of Assessment and Review is clothed with power and authority to prescribe all rules and regulations, not inconsistent with the provisions of the act, necessary and advisable for its detailed administration and to effectuate its purpose. Section 6943-f55. Rules and regulations relating to retail sales tax were promulgated and published for the use of those interested, among which is rule No. 19, relating to shoe repairers as follows:

"Persons who are engaged in the business of repairing shoes render service. They are purchasers for use or consumption of tangible personal property used by them, incidentally, in the rendering of such service. Consequently, the sales of sole leather, rubber heels, and other findings to shoe repairers for their use in connection with the rendering such service are sales at retail and are taxable. Sales of sole leather, rubber heels, shoe laces, and other shoe findings by shoe repairers not used in connection

with their services but sold directly to purchasers for use, are taxable.

"Receipts from the services of shoe repairing or shoe shining or rebuilding are not taxable."

The law is made applicable to all sales on and after April 1, 1934. The plaintiff, contending that the shoe repairmen do not consume or use the material in making the repairs, but that the consumer of such material is the person who wears out the shoes, claims it is not subject to the tax. It also contends that it will be unable to successfully compete with jobbers outside of the state if compelled to add to its sale price the 2 per cent tax. It, therefore, failed to file with the Iowa State Board of Assessment and Review proper return showing gross receipts from sales to shoe repairmen throughout the state; its customers numbering about 1,000. Thereupon, the board computed the amount of the gross receipts for a period beginning April 1, 1934, and ending September 30, 1936, and assessed the amount of tax due thereon as $2,705.65, with added penalty of $583.34. Notice of assessment was duly given; to which plaintiff appeared and filed objections and made application for hearing; said hearing was had on March 16, 1937, which resulted in the tax and penalty being sustained.

Five separate grounds of reversal are presented by appellant in its brief and argument:

I. First, it is urged that the court erred in finding that the shoe repairman was a "consumer or user" of sole leather and rubber heels and that the sale by plaintiff of such materials to shoe repairmen was a "sale at retail".

It will be readily seen that a proper solution of the problem requires a construction of the language of the statute as to what is meant by the term "consumer or user". Is it the person who wears the shoes after they are repaired (the Supreme Court of Utah in case of Western Leather & Finding Company v. State Tax Commission of Utah, 87 Utah 227, 48 P. 2d 526, answers the question in the affirmative) or is the repairman a "consumer or user" of tangible personal property when he uses the same in repairing shoes? Notwithstanding the ruling of the Utah Supreme Court, we are inclined to the view that, as the term is used in our statute and under the definition of "sale at retail" as contained in our statute, the shoe repairmen are "con-

sumers or users" of the material that goes into repairing the shoes of another; and that the material so used is within the meaning of the statute "consumed or used", and hence the plaintiff, as seller, is subject to the tax. The act defines its own terms. "Sale at retail" is defined to mean "sale to a consumer or to any person for any purpose, other than for processing or for resale." Section 6943-f38, subd. c. If the property sold is to be used in "processing", theoretically, if not actually, it becomes an integral part or ingredient of a finished product for resale. A good example of this is ice cream, which contains many ingredients. "Sales at retail", in the commonly accepted meaning, are usually made by persons or corporations engaged in operating a retail store wherein are kept goods and merchandise for sale to the ultimate consumer; the appellant argues that because it was not conducting such a store, but was a member of a national organization of wholesalers and jobbers and so listed in the trade journal, Shoe Repair Service, published by the trade promotion bureau, National Leather and Shoe Finders Association, located at St. Louis, Missouri, that the court was in error in holding that sales by it were "sales at retail". In construing this statute, we are bound by the definition of terms made use of by the legislature. As stated by this court in the case State v. City of Des Moines, 221 Iowa 642, 644, 266 N. W. 41, 42, "the legislature is its own lexicographer." The guiding and controlling consideration is "the disposition of the goods made by the buyer, not the character of the business of the seller or the buyer". Boyer-Campbell Co. v. Fry, 271 Mich. 282, 260 N. W. 165, 172, 98 A. L. R. 827. The point urged by appellant is that, even though the material is used in repairing another person's shoes, and notwithstanding the service charge is one lump sum, the material used is, in fact, a resale of such material. We are inclined to the view that this is too strained and narrow a construction and, when applied to the vocation of shoe repairers, would render the law unworkable and impracticable. Such a rule of construction might be made practical in so far as the use of such articles as rubber heels or the use of taps for a complete job of resoling the shoes is concerned, but, as applied to the numerous other and different repair jobs, which include patchwork of all kinds, necessitating the use of odd and irregular pieces of material and quantities incapable of any fixed or definite price value, the same would be wholly impracticable. If the

material were being used in processing or used directly in the production of other tangible personal property which was to be placed upon the market and resold in a different form, the one who sold the property in its changed or finished form would be subject to the tax. We think a reasonable construction of the meaning of the words "consumer or user" contained in the statute is properly applicable to the shoe repairmen. When he cuts a half sole or tap from a bend or strip of leather and shapes it to fit an old shoe and then applies the wax or cement, thread or nails, and fastens it solidly to the old shoe, it amounts to a consumption by him in making the repair; while it is not totally destroyed, he has "consumed and used" this leather, ultimately and finally, and he thus becomes the end "consumer and user". We are of the opinion that rule No. 19 is as fair, reasonable, and practicable as can be formulated, when applied to the vocation of shoe repairing. The writer of this opinion mulled this matter over in his mind several days in an endeavor to formulate a better or more reasonable, workable rule, without success in his endeavor. Appellant, while complaining of this rule, has suggested nothing better. The evidence shows that a large per cent of the men engaged in this worthy calling of repairing shoes are foreigners, crippled or handicapped in one way or another, and many of the poorer or smaller shops keep no record, while many of them in larger cities, some in the smaller places, are no doubt competent and able businessmen. When the business is considered as a whole, from the standpoint of administration under the law, the details of which, under the statute, are left to the board, we are inclined to agree with the trial court that rule No. 19 is reasonable and practicable and is not in contravention of the statute and hence is valid.

Appellant attempts to place the shoe repairmen in the same classification with the automobile dealers in repairing cars. The analogy is very remote. The items which enter into the finished repair job of a pair of shoes are "consumed and used" in the shop of the repairman. The items used become an integral part of the customer's shoes; the repair adds to the life of his shoes and he is the "consumer and user" of the shoes. If the repairman were in the business of selling secondhand shoes, buying them, repairing them, and reselling the same, then the items used in making the repairs would become a part of the repairman's own property. When he sold the shoes, he would be selling

items used in making the repairs and would be subject to the tax because he would be, in a sense, a processor, in that he would be making new shoes out of old ones; but, when he repairs the customer's shoes, he is not selling leather, he is selling services as a repairman. The thing that brings him his business is not the brand of soles or heels used, but the character of his workmanship—the kind of a job he turns out; this is different from placing a new timer, new sparkplug, new generator, or bumper on an automobile. The automobile dealer has a fixed price for all parts, and, in rendering his bill, he charges, separately, for the service and the parts used. This system of bookkeeping would be practically impossible of application in the shoe repair business. Repairing shoes is more analogous to the tire and battery service, where new parts are used in repairing an inner tube or in vulcanizing a tire; and, as we understand the rules of the Iowa State Board of Assessment and Review, the same rule is applied to such service as is applied to the service of shoe repairmen.

II. The second error pointed out has already been answered; namely, that the plaintiff was engaged in wholesale business. Appellant attempts to apply the dictionary definition of the word "wholesale" as compared with the word "retail". As heretofore pointed out, it is the statutory definition of terms which governs.

III. There is no merit in appellant's third assignment of error to the effect that rule No. 19 is inconsistent with the law. Appellant argues that it is not a question of whether the rule is a reasonable one, but whether it is inconsistent with the provisions of the law imposing the tax. We find no inconsistency and no delegation of power. For more detailed discussion of this phase of the matter, see cases State v. Manning, 220 Iowa 525, 259 N. W. 213; Vilas v. Iowa State Board of Assessment and Review, 223 Iowa 604, 273 N. W. 338.

IV. It is next urged that the court erred in failing to find that the shoe repairman is engaged in the processing or resale of tangible personal property. This matter has already been fully covered.

V. Finally, it is contended that the court erred in failing to find that rule No. 19 is discriminatory and in violation of the uniformity clause of Article I of the Constitution of the State of Iowa. Laws relating to taxation, as well as all other

laws of a general nature, must have a uniform operation to meet the requirements of constitutional provisions. However, courts have long since recognized that, in the matter of taxation, perfect uniformity, which in its last analysis means an equal distribution of the burdens of taxation upon all persons of a given class, is impossible of perfect application. Newport Mining Co. v. City of Ironwood, 185 Mich. 668, 152 N. W. 1088; and Union Steam Pump Sales Co. v. Deland, Secretary of State, 216 Mich. 261, 185 N. W. 353. In so far as the uniformity rule relates to taxation, courts have quite uniformly held that they have no application to a so-called privilege tax or tax on business. Vilas v. Iowa State Board of Assessment and Review, 223 Iowa 604, 273 N. W 338. Appellant points out that rule No. 19, applicable to shoe repairers, is inconsistent with other rules of the board applicable to oculists, optometrists, blacksmiths, restaurants, automobile repair shops, and garages. A careful consideration of the rules disclose an attempt on the part of the board to have all the rules work uniformly on persons similarly situated or in the same class and, at the same time, have a workable rule that will accomplish the ultimate purpose and aim of the legislature as disclosed by the Retail Sales Tax Law, Code 1935, section 6943-f38 et seq. We fail to discern wherein the board has acted arbitrarily or capriciously in the promulgation of rule No. 19. Appellant points out that the Tax Commission of the State of California has, by rule adopted March 1, 1934, classified shoe repairmen as retailers and laid down the arbitrary rule that, where repair work is done for a lump sum, 25 per cent thereof is considered the charge for tangible personal property used in connection with such repair work and to this extent the tax would not apply. There might be some question whether such a rule is more reasonable or less arbitrary than rule No. 19 of the Iowa State Board of Assessment and Review. One can readily see that the fixing of a definite percentage applicable to all repair work would be more or less arbitrary and illustrates what we have indicated above, that in administering laws of this character applicable to the great variety of occupations, vocations, and businesses conducted throughout the entire state, so as to have the burden perfectly equal, is practically an impossibility. Substantial equality and uniformity is all that the law requires. We see no such lack of uniformity in the rules as to justify our interference. The California court has not passed

upon the 25 per cent rule adopted by the tax commission of that state and, of course, it is not before us and is only referred to by way of illustration. For other cases bearing on the question involved and which are cited in the briefs on file, see Mendoza Fur Dyeing Works, Inc. v. Taylor, 272 N. Y. 275, 5 N. E. 2d 818; Doby v. State Tax Commission of Alabama, May 1937, 234 Ala. 150, 174 So. 233; State Tax Commission of Alabama v. Hopkins, June 1937, 234 Ala. 556, 176 So. 210, 211; Long v. Roberts & Son, June 1937, 234 Ala. 570, 176 So. 213; In re Metz Bros. Brewing Co., 88 Neb. 164, 129 N. W. 443, 32 L. R. A. (N. S.) 622; Frazier v. State Tax Commission, June 1937, 234 Ala. 353, 175 So. 402; A. B. C. Electrotype Company et al. v. Ames et al. 364 Ill. 360, 4 N. E. 2d 476; J. A. Burgess Company v. Ames, 359 Ill. 427, 194 N. E. 565; People ex rel Walker Engraving Corporation v. Graves, 268 N. Y. 648, 198 N. E. 539; People ex rel Foremost Studio, Inc. v. Graves, 246 App. Div. 130, 284 N. Y. S. 906; H. G. Adair Printing Co. v. Ames, 364 Ill. 342, 4 N. E. 2d 481.

Finding no error, the decree of the trial court must be and is affirmed.—Affirmed.

STIGER, C. J., and DONEGAN, ANDERSON, MILLER, RICHARDS, and MITCHELL, JJ., concur.

## SUPPLEMENTAL OPINION.

PER CURIAM.—After considering the arguments presented in support of the petition for rehearing and upon further consideration and deliberation, a majority of the court are of the opinion that the original opinion filed herein on April 5, 1938, should be modified as follows:

As to taps and rubber heels, the same, having a fixed and definite price and handled by many retail stores and requiring but a comparatively small amount of labor in attaching them, should be considered a purchase for resale and the shoe repairmen should be required to pay the tax and as so modified the original opinion will stand and the petition for rehearing be overruled.