W. DAVID TYLER and KAREN A. TYLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tyler v. Commissioner
Docket Nos. 970-77, 12499-77
United States Tax Court
T.C. Memo 1982-160; 1982 Tax Ct. Memo LEXIS 590; 43 T.C.M. (CCH) 927; T.C.M. (RIA) 82160; March 29, 1982. *590 For the taxable years 1972 through 1976, petitioners claimed miscellaneous deductions, the majority of which were deducted as business expenses. Held, properly deductible amounts determined. W. David Tyler, pro se. Robert M. Fowler, for the respondent. STERRETT
*591 MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Docket
Taxable Year
Addition to tax
No.
Petitioner
Ended
Deficiency
under sec. 6653(a)
970-77
W. David Tyler
Dec. 31, 1972
$ 2,599.11
$ 129.96
and Karen A.
Dec. 31, 1973
1,721.87
136.09
Tyler
12499-77
W. David Tyler
Dec. 31, 1974
1,798,58
89.93
and Karen A.
Dec. 31, 1975
2,370.15
118.51
Tyler
Dec. 31, 1976
2,273.64
113.68
*592 After numerous concessions, the remaining issues for decision are (1) whether petitioners are entitled to travel and entertainment expense deductions claimed by petitioner W. David Tyler in excess of the amounts allowed by respondent; (2) whether petitioners are entitled to business expense deductions for costs incurred by petitioner Mr. Tyler during trips to Chicago, Illinois in 1973 and to Phoenix, Arizona and Las Vegas, Nevada in 1974; (3) whether petitioners are entitled to a business expense deduction for the cost of airfare incurred by petitioner Mr. Tyler on a trip to Florida in 1973; (4) whether petitioners are entitled to deductions for business mileage in excess of the amounts allowed by respondent; (5) whether petitioners are entitled to a business expense deduction for Mr. Tyler's purchase of a blazer jacket in 1973; (6) whether petitioners are entitled to business expense deductions for educational expenses incurred by petitioner Karen Tyler during 1974 and 1975; (7) whether petitioners are entitled to an additional sales tax deduction for 1972; and (8) whether petitioners are liable for additions to tax for negligence or intentional disregard of the rules and regulations *593 within the meaning of section 6653(a), I.R.C. 1954, for the taxable years 1972 through 1976, inclusive. Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners W. David Tyler and Karen A. Tyler resided in Waterloo, Iowa at the time of filing the petitions herein. They filed joint Federal income tax returns for the taxable years 1972 through 1976 with the Office of the Director, Internal Revenue Service. During the years 1972 through 1976 and continuing to the present time, petitioner W. David Tyler was an attorney licensed to practice law in the State of Iowa and was a partner in the law firm of Swisher and Cohrt in Waterloo, Iowa. After graduating from the University of Iowa Law School in 1963, Mr. Tyler moved to Waterloo, Iowa and joined Swisher and Cohrt as an associate. Neither Tyler nor his wife ever had resided in Waterloo previous to this time. Since Tyler's entry into the firm, Swisher and Cohrt has expanded to become one of the largest law firms in Waterloo, and Tyler has risen to become its third *594 most senior partner. At the time Tyler entered the firm in 1963, his senior partner was the only member of the firm engaged in community activities. Despite being the oldest firm in town, Swisher and Cohrt was at that time having little success in attracting new business. Therefore, it was determined that Tyler should step into the role of community activist with the hope of generating new business. He became a partner in 1968 and continues to be the "public relations man" in his firm. His activities have included, among others, membership in the Jaycees and the Waterloo Chamber of Commerce, the latter of which culminated in his presidency of that organization. Before embarking on our discussion of the merits of this matter, we cannot refrain from expressing our regret that our best efforts to cause a settlement in this case proved unsuccessful. Petitioner has pursued this case for a number of years. He has battled respondent on every front in a sincere belief that he is entitled to the deductions settled herein. Respondent played "hard ball" all the way. It is entirely possible, if not probable, that a resolution could have been reached administratively. 1. Travel *595 and Entertainment Expenses.
1972: On their 1972 Federal income tax return, petitioners deducted $ 3,426.39 for meals, lodging and entertainment of clients. By statutory notice dated October 29, 1976, respondent disallowed this deduction in its entirety. Thereafter, respondent conceded $ 656.32 of the deduction and petitioners conceded $ 2,391.42. Thus, of the original $ 3,426.39 disallowed by respondent, the amount of $ 378.65 remains in dispute. 1973: On their 1973 Federal income tax return, pettioners deducted travel and entertainment expenses in the amount of $ 3,243.50. Respondent disallowed this deduction in its entirety, but has since conceded that $ 1,134.99 is deductible. Petitioners, in turn, conceded $ 1,506.61 of the deduction, leaving $ 601.90 in issue. 1974: For 1974, petitioners deducted $ 2,422.60 as business expenses incurred for meals, travel and entertainment. By statutory notice dated September 27, 1977, respondent disallowed $ 1,195.85 of the claimed deduction, but later conceded $ 363.24. Petitioners increased their claimed deduction by $ 377.84, thereby leaving $ 1,210.45 in issue. 1975: For 1975, petitioners claimed $ 3,459.15 in travel and *596 entertainment expense deductions. Respondent disallowed $ 1,570.43 of the deductions, but later conceded $ 681.70. Petitioners thereafter increased their claimed deduction by $ 726.07, leaving $ 1,614.80 in issue. 1976: For 1976, petitioners claimed $ 2,566.90 as a travel and entertainment expense deduction. Of this amount, respondent disallowed $ 1,655.11, but later conceded $ 334.75. Petitioners conceded $ 240.02, leaving $ 1,080.34 in dispute. The travel and entertainment expenses all allegedly were incurred in connection with Tyler's law practice. Most of the expenses so incurred by Tyler resulted from trips, meals and other meetings with clients of the law firm, many of whom were also Tyler's personal friends. Tyler also deducted a number of expenses arising from his participation in community activities on behalf of the law firm. In addition, Tyler incurred expenses in connection with the Waterloo Black Hawk Hockey Team. Tyler served as the team lawyer, but also served on the board of directors, as secretary, as vice-president and, finally, as president of the team. In substantiation of the claimed deductions, Tyler submitted his personal calendars and his firm's *597 daybook for the years in question. He also produced copies of "I.O.U.s," presumably for monies borrowed from the firm's petty cash account. Finally, in addition to his oral testimony, Tyler introduced annual travel and entertainment expense summaries which had been prepared well after the years in question. A taxpayer has no absolute right to deductions, for they are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Thus, in order for petitioners to be entitled to the claimed deductions, they must prove that they fit within the relevant statutory authorization. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
In order for the claimed trade or business expenditures to be deductible, they must be "ordinary and necessary expenses paid or incurred during the taxable year in carrying on" such trade or business. Sec. 162; sec. 1.162-1(a), Income Tax Regs. Such "ordinary and necessary expenses" can include travel and entertainment expenses. However, in the case of such expenditures, additional requirements are imposed as a prerequisite to deductibility. *598 These requirements are embodied in the strict substantiation rules of section 274(d) and the regulations thereunder. Section 274(d) disallows deductions for travel and entertainment expenses unless the taxpayer "substantiates by adequate records or by sufficient evidence corroborating his own statement" the amount of the claimed expense, the time and place of the travel or entertainment, the business purpose of the expense and the business relationship to the taxpayer of the persons entertained. These four elements must be established for each separate expenditure. Sec. 1.274-5(c)(1), Income Tax Regs.; Dowell v. United States,522 F.2d 708, 714 (5th Cir. 1975), cert. denied 426 U.S. 920 (1976). In general, petitioners can satisfy the substantiation requirements of section 274(d) by meeting the "adequate records" test or through "substantiation by other sufficient evidence." Proof by "adequate records" requires that the taxpayer maintain an account book, diary, statement of expense or similar record and documentary evidence which, in combination, "are sufficient to establish each element of an expenditure." Sec. 1.274-5(c)(2)(i), Income Tax Regs. *599 The entry in the account book or diary must be made at or near the time of the expenditure and normally must provide substantiation of the businss purpose of the expenditure. Sec. 1.274-5(c)(2)(ii)(a) and (b), Income Tax Regs. Lack of specificity is fatal. [1]
In addition to an account book or diary, substantiation by adequate records requires documentary evidence for lodging and for any other expenditure of $ 25 or more, [2] except for transportation charges, if documentation for such charges is not readily available. Sec. 1.274-5(c)(2)(iii), Income Tax Regs. Examples of documentary evidence include receipts, paid bills or other similar evidence. Failure to produce such documentary evidence can result in disallowance of travel and entertainment deductions. Alter v. Commissioner,50 T.C. 833, 836 (1968); Sanford v. Commissioner,50 T.C. 823, 828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied *600 396 U.S. 841 (1969). The documentary evidence produced normally must establish the amount, date, place and essential character of the expenditure. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.
Alternatively, the substantiation requirements of section 274(d) can be satisfied by petitioners' oral or written statement when supported by other corroborative evidence. "Other corroborative evidence" can take two forms. The taxpayer either can introduce oral or written testimony of third person with actual knowledge of the expenditure or he can submit documentary evidence subject to the same requirements imposed under the adequate records test. Sec. 1.274-5(c)(3), Income Tax Regs.[3]
*601 Petitioners consistently failed to substantiate the disputed expenditures under either of the two alternative methods. Mr. Tyler's daybook and calendars, in combination, sometimes indicated that an expenditure might have been made, but, with one exception, either the amount or place of expenditure, or both, was missing from such daily records. Even the fact of expenditure, along with its business purpose, generally was not established. Accordingly, the evidence submitted was insufficient for purposes of the adequate records test. Moreover, petitioners introduced no documentary evidence for lodging and for expenditures of $ 25 or more as is required by sec. 1.274-5(c)(2)(iii), Income Tax Regs.[4] Petitioners did submit summaries for all the years in question which listed the date, amount and business purpose of each expenditure. The place of expenditure, however, was omitted. These summaries clearly do not constitute documentary evidence. Neither are they account books or diaries, for they were not made at or near the time of expenditure, but rather were prepared at the request of respondent in order to facilitate preparation of the case. See sec. 1.274-5(c)(2), Income Tax Regs. *602 [5]
At best, the summaries can be used in conjunction with Tyler's oral testimony to satisfy the first prong of the second alternative test under section 1.274-5(c)(3), Income Tax Regs. However, that test also requires corroborative evidence sufficient to establish each element. Since petitioners did not present testimony of a third person with direct knowledge of the expenditures, the only other means of corroborating Tyler's own testimony was by submitting documentary evidence. This, as we have said, he failed to do. Tyler's failure of proof is wholly attributable to his failure to maintain simultaneous records of his expenditures. *603 Nothing he said at trial court have cured this defect. The law is clear that unsupported self-serving testimony is not sufficient to meet the requirements of section 274(d). S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 741; Rutz v. Commissioner,66 T.C. 879, 885 (1976); Ashby v. Commissioner,50 T.C. 409, 416 (1968). Bearing in mind the rigorous and manifold requirements for deductibility of travel and entertainment expenses, and after a thorough and exhaustive review of the documents submitted and evidence presented by Mr. Tyler, we find that of the disputed deductions the following amounts properly are deductible by petitioners for the following taxabel years: 1972 through 1975, 0; 1976, $ 6. [6]
Our decision does not reflect upon Mr. Tyler's credibility. Our result is required by the strenuous requirements of section 274. The law requires taxpayers to fulfill certain regorous substantiation requirements in order to *604 deduct the specified expenses. Tyler's failure to comply with such requirements is the cause of his downfall. 2. Business Trips.
On their 1973 Federal income tax return, petitioners deducted $ 108.25 for expenses incurred by Mr. Tyler in traveling to Chicago allegedly to meet with representatives of P.T. Consultants, a corporate client of Tyler's. The claimed deduction subsequently was reduced to $ 59.98. In 1974, Tyler journeyed, by way of Freeport, Illinois and Chicago, to Phoenix to attend the annual meeting of the Self-Employed Section of the American Physical Therapy Association. The resultant deduction totaled $ 215, an amount later reduced to $ 169. Without restating the substantiation requirements of section 274(d) and the regulations thereunder, we once again hold that petitioners have failed to prove compliance with the strict requirements for deductibility. No documentary support was submitted into evidence. We were presented with no receipts or paid bills. In addition to the lack of documentary evidence, petitioners did not itemize the amount of each separate expenditure as is required. Sec. 1.274-5(b)(2)(i), Income Tax Regs. A vague statement in Tyler's *605 daybook is not enough to satisfy section 274(d). Therefore, we must disallow the deductions for the trips in their entirety. [7]
3. Cost of Airfare.
In petitioners' 1973 income tax return, a business deduction was claimed in the amount of $ 422.07, representing the cost of airfare for a flight taken by Mr. Tyler immediately after the death of his father-in-law. The parties stipulated that no deduction should be allowed for $ 192.24 of this amount and further stipulated that petitioners had adequately substantiated $ 220.88 of the airfare. Mr. Tyler's father-in-law died on November 23, 1973. Mrs. Tyler immediately flew to Florida, leaving behind her father's will, which had been drafted by Mr. Tyler. Thereafter, at his brother-in-law's request, Mr. Tyler flew to Florida with the will and assisted in the *606 processing of the estate. Mr. Tyler was not paid for any of the services that he provided during his stay in Florida. Petitioners argue that because Tyler's sole reason for traveling to Florida was to render legal assistance, the expenses incurred therefrom are deductible as business expenses. In order to be deductible, such expenses must be "ordinary and necessary" and incurred by Tyler while carrying on his trade or business. Sec. 162; sec. 1.162-2, Income Tax Regs.If the expenses constitute "personal, living or family expenses," they are not deductible. Sec. 262; sec. 1.262-1(b)(5), Income Tax Regs.Section 1.162-2(a), Income Tax Regs., provides: Only such traveling expenses as are reasonable and necessary in the conduct of the taxpayer's business and directly attributable to it may be deducted. If the trip is undertaken for other than business purposes, the travel fares and expenses incident to travel are personal expenses * * *. We believe that Tyler's trip to Florida was motivated by personal concerns. He was not paid for his presence and presumably did not expect to be. While his experience as a lawyer no doubt made his presence and assistance especially valuable *607 to his wife and his in-laws, this does not transform the basic nature of his errand as a concerned family member. We hold that the cost of airfare is nondeductible.[8]
4. Business Mileage Deduction.
For the taxable years 1972 through 1976, petitioners deducted automobile expenses in the amounts of $ 2,113.50, $ 2,420.51, $ 1,464,27, $ 1,413.15, and $ 1,892.25, respectively. Mr. Tyler was reimbursed during those years in the amounts of $ 416.98, $ 540.04, $ 553.69, $ 442.05, and $ 1,012.95, respectively. In his statutory notices, respondent disallowed deductions in the amounts of $ 1,393.50, $ 1,820.51, $ 910.58, $ 971.10, and $ 879.30, respectively. During the years before the Court, petitioners owned two automobiles. Mr. Tyler was the primary driver of one of the cars and Mrs. Tyler was the primary driver of the other. All business mileage was accrued on Mr. Tyler's car. In 1972, Mr. Tyler logged 24,500 total miles on his car. He estimated that 70 percent of this amount was business mileage and took a corresponding deduction of $ 1,993.50. He also deducted $ 120 in parking *608 fees, which respondent does not contest. Respondent conceded a deduction for unreimbursed out-of-town mileage of 4,562 miles. At issue for 1972 is the extent of local mileage that is deductible as business mileage. In 1973 and 1974, Mr. Tyler leased an automobile. His total car-related expenses with respect to this car were $ 2,847.67 in 1973 and $ 1,722.68 in 1974. After estimating that the auto was used for business purposes 85 percent of the time, he deducted 85 percent of his expenses, or $ 2,420.51 in 1973 and $ 1,464.27 in 1974. Respondent contends that these deductions should be limited to $ 557.04 and $ 764.25, respectively. In 1975, Mr. Tyler again drove his own car, and accrued total miles of 12,561. He estimated that 75 percent of these, or 9,421, were business miles. After reducing this amount by reimbursed mileage of 2,947, he took a deduction of $ 971.10. Respondent seeks to limit the deduction to $ 649.50. In 1976, Mr. Tyler logged 16,819 total miles. He estimated that 75 percent of these, or 12,615, were business miles. After reducing this amount by reimbursed mileage of 6,753, he took a deduction of $ 879.24. Respondent contends that the proper amount *609 should be $ 512.55. Mr. Tyler testified that due to the nature of his practice, a great deal of in-town business travel was necessitated. As a trial attorney, Mr. Tyler frequently was required to travel to other offices and locations for the purpose of interviewing witnesses, conferring with other attorneys and gathering evidence. The deductions arising from such travel were not the product of precise measurement, but were based on yearend estimates. While we believe that Mr. Tyler made substantial use of his car for business purposes during the years in issue, we agree with respondent that the percentages applied to the total operational expenses were somewhat excessive. At the same time, we believe that respondent's estimates are somewhat low. In such circumstances, we are permitted to use our own best judgment and estimate the reasonable expenses that petitioners are entitled to deduct. D'Angelo Associates, Inc. v. Commissioner,70 T.C. 121, 138 (1978); Sapp v. Commissioner,36 T.C. 852, 855 (1961), affd. *610 309 F.2d 143 (5th Cir. 1962); Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Accordingly, we hold that Mr. Tyler logged 3,000 in-town business miles in 1972 and 2,400 in-town business miles in 1975 and 1976. With respect to 1973 and 1974, we conclude that 60% of Mr. Tyler's use of his leased car was for business purposes. Deductions should be computed accordingly. [9]
5. Blazer Jacket.
In connection with his community activities on behalf of his law firm, Mr. Tyler was a member and officer of Waterloo's Chamber of Commerce during the years at issue. As a member of the Chamber of Commerce, Mr. Tyler joined the Ambassadors, which was *611 a goodwill arm of the Waterloo Chamber of Commerce. Ambassadors are identified by red blazers, which they must buy in their capacity as members of that branch organization. During 1973, the Ambassadors changed the style of the blazers, and Mr. Tyler was required to purchase one of the new styled blazers at a price of $ 46.35. On their 1973 Federal income tax return, petitioners deducted this amount as a portion of the organizational dues connected with his membership in the Chamber of Commerce. Respondent disallowed the deduction for the blazer. The resolution of this issue again hinges upon whether the expense is an ordinary and necessary expense incurred in the conduct of the taxpayer's trade or business, and therefore deductible under section 162(a), as opposed to an expense that is personal in nature and therefore nondeductible pursuant to section 262. The petitioners have the burden of proving deductibility. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
In order for the cost of clothing to be a deductible business expense, three criteria must be established: (1) the clothing must be required or *612 essential in the taxpayer's business, (2) the clothing must be unsuitable for general or personal wear, and (3) the clothing must not be so worn. Hynes v. Commissioner,74 T.C. 1266, 1290 (1980); Yeomans v. Commissioner,30 T.C. 757, 767 (1958). Here, petitioners have made no showing that the blazer was unsuitable for general wear as ordinary clothing or that it was not so worn and therefore have not proved the second and third prerequisites to deductibility. Thus, we must disallow this deduction. 6. Educational Expenses.
At trial, petitioners raised the issue of whether certain educational expenses incurred by Mrs. Tyler were deductible as trade or business expenses. The parties have agreed that petitioners substantiated expenditures in 1974 and 1975 in the amounts of $ 10 and $ 269.69, respectively, for the claimed educational expenses. These amounts were not deducted on petitioners' income tax returns for those years. Petitioner Mrs. Tyler was employed as a school teacher up until the time of her husband's graduation from law school in June of 1963. Some 11 years later she decided that she would like to teach once again. In order *613 for her to secure employment as a teacher, it first was necessary for her to become recertified since her certification as a teacher had lapsed by 1974. As a result, she was required to take certain courses which presumably generated the expenses claimed by petitioners as deductions. Mrs. Tyler resumed teaching as a substitute teacher in the 1977-1978 school year. The educational expenses incurred by Mrs. Tyler are deductible only if they are "ordinary and necessary expenses incurred" in her trade or business. Sec. 162. Section 1.162-5(a)(1), Income Tax Regs., allows a deduction for educational expenses if such education "maintains or improves skills required by the individual in his employment or other trade or business." In order for educational expenses to be deductible, the expenses must relate to activities which amount to the present carrying on of an existing business. Corbett v. Commissioner,55 T.C. 884, 887 (1971). If one is established in a trade or business, and then abandons it, educational expenses subsequently incurred in order to enable the individual to reenter the trade or business are not deductible. *614 Reisinger v. Commissioner,71 T.C. 568, 572-574 (1979). During 1974 and 1975, Mrs. Tyler was not engaged in the trade or business of teaching. She had removed herself from the teaching profession some 11 years prior to the time she commenced classes required for recertification. Because she was not in the trade or business at the time the expenses were generated, petitioners are not entitled to deduct them as ordinary and necessary business expenses. Reisinger v. Commissioner,supra at 572-574. [10]
7. Sales Tax Deduction.
In 1972, petitioners claimed a sales tax deduction of $ 191.41 in addition to the deduction normally allowed by the general sales tax table. The additional deduction resulted from a sales tax petitioners claimed they were required to pay as part of Mr. Tyler's automobile lease obligation. The parties agreed that $ 146.41 was classified by the lessor as a sales tax in the lease agreement and that this amount was paid by petitioners to the lessor of the automobile. Mr. Tyler stated at *615 trial that at the time he entered into the lease Iowa law required the lessee of a new automobile to pay the sales tax, but that this law subsequently had been changed to impose the obligation upon the lessor. Section 164(a)(4) allows a deduction for state and local general sales taxes. Armentrout v. Commissioner,43 T.C. 16, 19 (1964). To be deductible, the tax must be a tax on sales at retail. Sec. 1.164-3(f)(1), Income Tax Regs. Generally, taxes are deductible only by the person upon whom they are imposed. Sec. 1.164-1(a), Income Tax Regs. However, section 164(b)(5)[11] creates an exception to this rule by treting "the consumer" as the party upon whom the tax is imposed where the amount of the general sales tax is "separately stated" and "paid by the consumer (otherwise than in connection with the consumer's trade or business) to his seller." In such case, the fact that "the incidence of such State or local tax does not fall on the consumer is immaterial." Sec. 1.164-5, Income Tax Regs. The regulations define the term "consumer" to mean "the ultimate user or purchaser." Sec. 1.164-3(e)(2), Income Tax Regs.
*616 During the year in question, the Iowa retail sales tax was a tax upon sales. "Sales" was defined as "any transfer, exchange, or barter, conditional or otherwise, * * * for a consideration." Iowa Code Ann. sec. 422.42(2) (West 1971). While this definition is broad, we do not believe that it is broad enough to encompass the lease in question. See Cedar Valley Leasing, Inc. v. Iowa Department of Revenue,274 N.W.2d 357, 360 (Iowa 1979). Petitioners have cited no law in support of their statement that the incidence of tax has shifted since 1972 and we were able to find none. Thus, because the sales tax was not imposed upon petitioners, they are not entitled to the claimed deduction unless the section 164(b)(5) exception applies. Here, the parties apparently are in agreement that the sales tax was "separately stated" by the lessor of the automobile and was paid by petitioners to the lessor. In order for petitioners to receive the benefit of the "separately stated" exception, they must be the "consumers" of the tax product under state law. *617 Armentrout v. Commissioner,supra at 20. [12] Under Iowa law, it is clear that the "consumer" is the lessor rather than the lessee. Dedar Valley Leasing v. Iowa Department of Revenue,supra at 360. Therefore, petitioners cannot take advantage of the section 164(b)(5) exception. It follows that the deduction must be disallowed since the tax in question was not imposed upon petitioners. 8. Addition to Tax Pursuant to Section 6653(a).
Section 6653(a) provides that there shall be an addition to tax for any part of an underpayment that is due to negligence or intentioanl disregard of rules and regulations. The burden of proof with respect to this issue is upon petitioners. Enoch v. Commissioner,57 T.C. 781 (1972). We believe that petitioners have carried their burden with respect to the addition. Mr. Tyler maintained detailed records of his business engagements and supplied summaries of all of his claimed business expenses. While these records often were not sufficient to satisfy the rigorous requirements of section 274(d), [13] we do not *618 believe that Tyler's failure amounts to negligence or intentional disregard of the rules and regulations. See Jackson v. Commissioner,59 T.C. 312, 318 (1972). [14] Additionally, we feel that the deduction taken by petitioner for the airfare to Florida to assist with his father-in-law's estate was taken in good faith, albeit mistakenly.All other deductions appear to have been sufficiently justifiable to merit the positions taken by petitioners on their returns. See Scott v. Commissioner,61 T.C. 654, 663-664 (1974). Although we have found that petitioners did, in fact, fail to maintain the records required under section 274(d), we do not believe that this failure was due to negligence or intentional disregard of the rules and regulations. Therefore, we hold for petitioners on this issue. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Gras v. Commissioner,T.C. Memo. 1974-230↩, affd. per order (7th Cir., Aug. 7, 1975).
2. The fact that an expenditure is for less than $ 25 does not obviate the necessity of diary or account book substantiation. Silverton v. Commissioner,T.C. Memo. 1978-22↩.
3. In exceptional circumstances, a taxpayer can substantiate travel and entertainment expenditures with proof that does not rise to the level of the adequate records or sufficient evidence tests. See sec. 1.274-5(c)(4), Income Tax Regs. (substantiation in exceptional circumstances) and sec. 1.274-5(c)(5), Income Tax Regs.↩ (loss of records due to circumstances beyond control of the taxpayer). Petitioners have not attempted to invoke either of these two relief mechanisms, and no evidence has been presented that would entitle them to do so.
4. Although a few checks were stipulated to by the parties, they did not establish business purpose. See sec. 1.274-5(c)(2)(iii), Income Tax Regs.; Oliver v. Commissioner,553 F.2d 560↩ (8th Cir. 1977), affg. a Memorandum Opinion of this Court. 5. See Rembusch v. Commissioner,T.C. Memo. 1979-73↩, where a "diary" that was prepared approximately 3 or 4 years after the years in issue failed "to provide substantiation of the claimed expenses for lack of contemporaneous preparation."
6. The single $ 6 expenditure held deductible for 1976 was substantiated by means of Tyler's diary and daybook. Documentation was unnecessary since the expenditure was for less than $ 25.↩
7. Petitioners also deducted $ 741.52 for the expense of a trip taken by Mr. Tyler to Florida in 1975. The amount claimed was later reduced to $ 241.22. Because the expense was included as a "meals, lodging and entertainment of clients" expense on petitioners' 1975 return, we have already dealt with this deduction under the first issue and need not repeat it here.↩
8. See generally, Vartanian v. Commissioner,T.C. Memo. 1977-110↩.
9. Respondent conceded the deductibility of unreimbursed out-of-town mileage in the following amounts: 1972
4,562
1973
2,842
1974
3,295
1975
2,530
1976
1,617
In computing the total business mileage deductible for each year, the above amounts should be added to the deductible in-town mileage determined above for 1972, 1975 and 1976. For 1973 and 1974, such mileage should not figure in the computations since the deduction is to be computed as a percentage of itemized costs.↩
10. See also Cannon v. Commssioner,T.C. Memo. 1980-224, affd. 659 F.2d 1084↩ (7th Cir. 1981).
11. Sec. 164(b)(5)↩ was amended in 1978 by the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2777, but in a manner not here relevant.
12. See also Porter v. Commissioner,T.C. Memo. 1978-391↩.
13. Respondent conceded that some of Mr. Tyler's claimed deductions were adequately substantiated. Thus, in some cases the requirements of sec. 274(d)↩ were met. 14. See also Zitzewitz v. Commissioner,T.C. Memo. 1969-17↩.